UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
                                                           :
GLENROY A. SCHECKELLS,                                     :   04 Civ. 7776 (RJH)
                                                           :
                           Plaintiff,                      :
                                                           :
            -against-                                      :   **MEMORANDUM ORDER**
                                                           :   **AND OPINION**
GLENN S. GOORD, et. al.,                                   :
                                                           :
                           Defendants.                     :
                                                           :
-----------------------------------------------------------x

Plaintiff Glenroy Scheckells is an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), and is currently incarcerated in the Washington Correctional Facility. He brings the instant suit pursuant to 42 U.S.C. § 1983 against twelve DOCS employees: Denise F. Boyd, Thomas J. Briggs, Nicholas F. Chalk, Edward Corley, Raymond, J. Cunningham, Dorothy Davis, Glenn S. Goord, Dr. Frank Lancellotti, Carol Liciage, Dr. Mervat R. Makram, Sheila Snow, and Dr. Lester Wright (collectively "defendants"). Plaintiff alleges that defendants violated his Eighth Amendment right to be free of cruel and unusual punishment when they terminated the treatment he was receiving for the hepatitis C virus ("HCV"), which plaintiff alleges was deliberately indifferent to his serious medical needs.

Plaintiff seeks relief for the alleged Eighth Amendment violations in four forms: (1) an order from this Court directing Drs. Makram and Lancellotti to resume plaintiff's HCV treatment; (2) a professional reprimand for violations of the Hippocratic Oath, the Patient's Bill of Rights, and the Eighth Amendment; (3) an assurance from the Court that

1

no DOCS or facility employee will retaliate against plaintiff for filing the instant complaint; and, (4) forty million dollars in damages for pain and suffering.  Defendants now move to dismiss the complaint under Rule 12(b)(1) and 12(b)(6), or in the alternative, for summary judgment pursuant to Rule 56(c).  Fed. R. Civ. P. 12(b), 56(c).  For the reasons discussed below, the Court finds that conversion of the motion to one for summary judgment is appropriate, and further, that the motion should be granted.

## BACKGROUND

Except where indicated, the following background is taken from plaintiff's complaint.

At the time the complaint was filed, plaintiff was a prisoner at Woodbourne Correctional Facility in Woodbourne, New York.  In January 2003 plaintiff tested positive for HCV, a viral liver disease that can result in inflammation, scarring, and eventually cirrhosis of the liver.  (*See* Defs.' Ex. A.)  Sometime thereafter, plaintiff learned of the infection.  Plaintiff began receiving treatment sometime after his diagnosis.  Plaintiff identifies the physicians in charge of his medical care on this issue as Dr. Mervat R. Makram and Dr. Frank Lancellotti.  Plaintiff alleges that on January 6, 2004, he was instructed by Dr. Makram that his treatment would be terminated if he did not agree to participate in "Alcohol and Substance Abuse Treatment" ("ASAT").  Dr. Makram informed plaintiff that his medical records contained a signed confession indicating that he had an alcohol and substance abuse problem, as a result of which participation in ASAT was a necessary corequisite of receiving treatment for HCV.  Plaintiff informed Dr. Makram that he was ineligible to participate in ASAT—according to its own eligibility criteria—because he did not have a substance abuse conviction, a history of

substance abuse (nor, therefore, any likelihood or relapsing), nor any indication of substance abuse within the last two years.[1] Nonetheless, and perhaps without his knowledge at the time, plaintiff alleges that as of January 8, 2004, the day before his treatment was terminated, he was (unwillingly) enrolled in an ASAT program. His participation was to begin on January 12, 2004.

On January 9, 2004, plaintiff had a medical interview with "the facility nurse." The nurse informed plaintiff that pursuant to the instructions of Dr. Makram and Dr. Lancellotti—who in turn were implementing a medical care policy created by Dr. Lester Wright—plaintiff would have to sign a form consenting to participating in ASAT if he wished to receive further HCV treatments. Plaintiff refused, repeating his ineligibility, and protesting the termination of medical treatment for a serious medical need on non-medical grounds. The nurse next presented plaintiff with a second form that would have indicated plaintiff's voluntary refusal of medical treatment. Plaintiff refused to sign the form, since he did not want to voluntarily refuse medical treatment, and requested that his HCV treatment be administered. The nurse rejected his request, citing the signed confession first mentioned to plaintiff by Dr. Makram that made ASAT participation a necessary corequisite. Plaintiff alleges that he received his last HCV treatment on January 9, 2004.

Plaintiff alleges that Dr. Makram and Dr. Lancellotti are consciously and maliciously denying plaintiff medical treatment for which he has a serious need, despite the prescription of the treatment by plaintiff's physician(s). Plaintiff cites the concern that starting and stopping HCV treatment creates a risk that his strain will become

---

[1] Plaintiff also alleges that he was "removed from ASAT participation in December 2003," though it is unclear how that allegation bears on his eligibility.

resistant to further medication. He also discusses his fear of "physical torture or a lingering death" stemming from failure to treat HCV. Finally, given plaintiff's allegation that he was enrolled in ASAT as of January 8, 2004, plaintiff alleges that his treatment should not have been discontinued on January 9, 2004 for failure to enroll in ASAT.

According to defendants' undisputed submissions, however, tests performed *prior* to the discontinuation of plaintiff's HCV treatment, and all tests performed since, demonstrate that plaintiff has been cured of his condition. Dr. Trachtman, a physician employed by DOCS, has reviewed plaintiff's files, and is also plaintiff's current physician. (Trachtman Decl. ¶¶ 1–2.) As noted above, plaintiff was first confirmed to have HCV antibodies on January 16, 2003. (Tractman Decl. ¶ 11; Defs.' Ex. A.) Treatment, in the form of Pegintron, in combination with ribavirin, was commenced on October 17, 2003. (Trachtman Decl. ¶ 15; Defs.' Ex. E.) As of January 6, 2004, HCV was not detectable in plaintiff. (Tracthman Decl. ¶ 17; Defs.' Ex. F.) Defendants do not dispute plaintiff's allegation that his HCV treatment was in fact discontinued on January 9, 2004. Plaintiff was again tested on March 9, 2005, and again tested negative. (Trachtman Decl. ¶ 18; Defs.' Ex. G.)

To date, plaintiff has not filed any response to defendants' motion to dismiss, or in the alternative, for summary judgment. On January 31, 2006, this Court held a telephone conference with plaintiff and defendants' counsel to determine whether plaintiff intended to file any response. (*See* Jan. 31, 2006 Conf. Tr. ("Tr.") 2:10–2:25.) Plaintiff indicated that he did intend to respond (*id.* at 3:01–3:24), and he was given two weeks to file any submissions (*id.* at 3:25–4:04; Feb. 2, 2006 Order, docket entry [28]). As of the date of this opinion, no response by plaintiff has been filed. During the course

of the January 31 conference, plaintiff stated, in substance, that he has received numerous blood tests in the recent past, that each of the tests proved negative for HCV, and that the doctors have repeatedly told him there is "nothing wrong" with him. (Tr. 4:24–5:24.) It is plaintiff's position that the blood tests are wrong because there is "no cure" for his disease. (*Id.* at 5:18–5:24.)

## DISCUSSION

1. <u>Conversion of the Motion to Dismiss</u>

Defendants' submissions showing that plaintiff tested negative for HCV prior to the January 9, 2006 termination of his treatment, and continues to test negative, may prove dispositive of this action. However, on a motion to dismiss the court's function is "not to weigh the evidence . . . but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). Where determination of a motion to dismiss pursuant to Rule 12(b)(6) considers information contained in exhibits attached to the motion and not contained in the complaint, the Court should convert the motion to one for summary judgment, provided there has been notice to plaintiff. *See Amaker v. Weiner*, 179 F.3d 48, 50 (2d Cir. 1999) (citing *Kopec v. Coughlin*, 922 F.2d 152, 154–55 (2d Cir. 1991)); *Morelli v. Cedel*, 141 F.3d 39, 46 (2d Cir. 1998) (citing *Carter v. Stanton*, 405 U.S. 669, 671 (1972)). Applying this standard, the Court hereby converts defendants' motion to a motion for summary judgment.

"Where a court converts the motion to dismiss to one for summary judgment, a non-moving party who is proceeding *pro se* must be advised that all assertions of material fact in the defendants' affidavits and other papers in support of their motion will be taken as true unless the *pro se* litigant contradicts those factual assertions in one or more

affidavits made on personal knowledge containing facts that would be admissible in evidence, or by submitting other materials as provided in Rule 56(e) of the Federal Rules of Civil Procedure." *Arnold v. Goetz*, 245 F. Supp. 2d 527, 540 (S.D.N.Y. 2003) (citing *McPherson v. Coombe*, 174 F.3d 276, 281 (2d Cir. 1999). Rule 56(e) of the Federal Rules of Civil Procedure provides as follows:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). In this case, in accordance with Local Civil Rule 56.2 for the United States District Court for the Southern and Eastern Districts of New York, a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" was provided to plaintiff by defendants with their moving papers, informing him that he may not oppose summary judgment by relying on the allegations in his complaint. (*See* docket entry [26].)

2.   Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 57 (2d Cir. 1997) (quoting Fed. R. Civ. P. 56(c)). In reviewing the record, the district court must assess the evidence in "the light most favorable to the non-moving party," resolve all ambiguities, and "draw all reasonable inferences" in its favor. *Am. Cas. Co. v. Nordic*

*Leasing, Inc.*, 42 F.3d 725, 728 (2d Cir. 1994); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

An alleged factual dispute between the parties will not by itself defeat a motion for summary judgment, since "the requirement is that there be no *genuine* issue of *material* fact." *Anderson,* 477 U.S. at 247–48 (emphasis in original). In order to defeat such a motion, the non-moving party must affirmatively set forth facts showing that there is a genuine issue for trial. *Id.* at 256; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Specifically, the nonmoving party cannot rely on mere allegations, denials, conjectures or conclusory statements, but present affirmative and specific evidence showing that there is a genuine issue for trial. *See Anderson*, 477 U.S. at 256–57; *Gross v. Nat'l Broad. Co.*, 232 F. Supp. 2d 58, 67 (S.D.N.Y. 2002). "A fact issue is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Mitchell v. Shane*, 350 F.3d 39, 47 (2d Cir. 2003) (quoting *Anderson*, 477 U.S. at 248). "A fact is 'material' if it might affect the outcome of the suit under governing law." *Id.* (quoting *Anderson*, 477 U.S. at 248).

3. <u>Plaintiff's § 1983 Claim for Violation of Federal Constitutional Right to be Free from Cruel and Unusual Punishment</u>

Individuals who have suffered a deprivation of a constitutionally protected right may seek relief under § 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

7

42 U.S.C. § 1983. There are, thus, two elements a § 1983 claim: first, plaintiffs "must establish that they were deprived of a right secured by the Constitution or laws of the United States"; second, plaintiffs must establish "that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999).

The Supreme Court has held that deliberate indifference to a prisoner's serious medical needs is a violation of the Eighth Amendment's prohibition of cruel and unusual punishment. *See Wilson v. Seiter*, 501 U.S. 294 (1991) (citing, *inter alia*, *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) ("[A] prisoner advancing [an Eighth Amendment] claim must, at a minimum, allege deliberate indifference to his serious medical needs. It is *only* such indifference that can violate the Eighth Amendment; allegations of inadvertent failure to provide adequate medical care, or of a negligent diagnosis, simply fail to establish the requisite culpable state of mind.") (internal quotation marks and citations omitted). Neither negligence nor medical malpractice "become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.

"The standard of deliberate indifference includes both subjective and objective components," and plaintiff must satisfy both elements in order to prevail. *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998); *see also Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998). First, plaintiff must show that "his medical condition is objectively a serious one." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003) (citing *Estelle*, 429 U.S. at 104). An official has a sufficiently culpable state of mind when that official "'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial

risk of serious harm exists, and he must also draw the inference.'" *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Defendants do not dispute that treatment for HCV is a serious medical need. *See Pabon v. Wright*, 2004 WL 628784, at *5 (S.D.N.Y. May 29, 2004) ("It is well-established that Hepatitis C qualifies as a serious condition for purposes of an Eighth Amendment analysis."); *Johnson v. Wright*, 234 F. Supp. 2d 352, 360 (S.D.N.Y. 2002) (holding that HCV constitutes an objectively serious medical condition). *Cf. Bender v. Regier*, 385 F.3d 1133, 1137 (8th Cir. 2004) (agreeing with district court's determination that although HCV infection was a serious medical need, the issue was whether inmate had serious medical need for immediate interferon treatment). However, the issue is whether the fact that plaintiff tested negative for HCV prior to the termination of his treatment prevents plaintiff, as a matter of law, from establishing the objective element of his deliberate indifference claim. The Court finds that it does.

While failure to treat a plaintiff actually suffering from HCV clearly satisfies the objective element of the deliberate indifference standard, it is uncontested here that, throughout the time period of the alleged deprivation of treatment, plaintiff has consistently tested negative with respect to the illness for which he seeks treatment. In such a case, where both parties agree that plaintiff is testing negative for an *otherwise* "serious medical need," and has been testing negative since prior to the time his treatment was discontinued, plaintiff cannot satisfy the objective element of his claim. Further, plaintiff's unsupported, layman's claim that the tests must be wrong is not sufficient to raise a material issue of fact. *See O'Conner v. Pierson*, 426 F.2d 187, 202 (2d Cir. 2005) ("Lay people are not qualified to determine . . . medical fitness, whether physical or

mental; that is what independent medical experts are for."); *see also Green v. Senkowski*, 100 Fed. Appx. 45 (2d Cir. 2004) (unpublished opinion) (finding that plaintiff's proffered self-diagnosis without any medical evidence, and contrary to the medical evidence on record, insufficient to defeat summary judgment in a deliberate indifference claim). Because, as a matter of law, plaintiff cannot establish an element of his claim, that claim cannot survive summary judgment.[2]

## CONCLUSION

For the foregoing reasons, defendants' motion [23] is hereby GRANTED. The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: New York, New York
March 31, 2006

_____
Richard J. Holwell
United States District Judge

---

[2] Summary judgment is appropriate even in the absence of further discovery as there is no basis for concluding that there are additional facts to be adduced that will establish that the multiple blood tests plaintiff has received are inaccurate. *See Berger v. United States*, 87 F.3d 60, 65 (2d Cir. 1996); *Wells Fargo Bank Northwest, N.A. v. Taca Int'l Airlines, S.A.*, 247 F. Supp. 2d 352, 360 (S.D.N.Y. 2002).